# Thompson *et al. versus* Mattern *et al.*

A. conveyed a tract of land to B., reserving to himself the entire privilege of all ore on the same, with the right to enter, mine, and remove it. Susequently, it appearing that the commonwealth had not issued a patent for this land, both A. and B. made application for it. After a hearing, the Board of Property awarded the patent to A. B. took an appeal from this decision, under the provision of the 11th section of the Act of April 3d, 1792, 3 Smith's Laws, 74, to the Court of Common Pleas. On the trial, the court directed a general verdict for B., holding that the said ore reservation was but an incorporeal hereditament, upon which the verdict would have no effect. *Held,* reversing the court below. (*a*) That a general verdict would cut off all of the rights of A., in the said ore reservation, and that his rights therein should, therefore, have been reserved in this verdict, for there only, could they be recognized in the patent. (*b*) That the Supreme Court could so amend the verdict, as to reserve the said rights of A., there being no purpose for which the case should be sent back for a re-trial.

February 18th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Centre county :* Of January Term 1887, No. 135.

This was an action of ejectment in the nature of an appeal from the decision of the Board of Property, under the provisions of the 11th section of the Act of April 3d, 1792, 3 Smith's Laws, 74 (Purdon's Digest, 1026, pl. 9), in which John B. Mattern and George Mattern were plaintiffs and Moses Thompson and John I. Thompson were defendants.

The following are the facts of the case as they appeared on the trial before SIMONTON, P. J., of the 12th Judicial District.

On September 24th, 1792, the commonwealth granted to Josiah Lambourn a warrant for a tract of 400 acres of land in Franklin township, Huntingdon county, which was subsequently surveyed, and on the 15th day of May, 1815, patented to James Duncan and John Barber, who had acquired the title of said Josiah Lambourn ; and on the 27th day of October, 1835, the title to said Lambourn survey became vested in Roland Curtin. Some time prior to 1820, Robert Shaw made an improvement on land adjoining this Lambourn survey, and after Shaw's death, J. B. Shugart, his executor, on September 19th, 1831, sold and conveyed this improvement, containing 226 acres and 77 perches and allowance, to Roland Curtin. About the year 1820, Andrew Hunter also made an improvement and acquired title to another tract of about 127 acres, adjoining the Lambourn survey and the Shaw improvement, which was likewise purchased by Roland Curtin, by articles of agreement

[Thompson et al. *v.* Mattern et al.]

dated September 27th, 1831, from said Andrew Hunter. Afterwards the title of Roland Curtin, Sr., to these three tracts of land became vested in his sons, Austin Curtin, James Curtin, John Curtin, Roland Curtin, Andrew G. Curtin and Constans Curtin, who, by articles of agreement, dated March 17th, 1854, sold and conveyed to Moses Thompson, John I. Thompson, James Thompson "the Martha Furnace property, with all land connected therewith, situate in Huston, Worth, Half-Moon, Patton and Ferguson townships, with all ore-lands, ore-rights, woodland and every part of the property connected with the Martha Furnace," which included the three tracts above specified. No deed was made by the Curtins in pursuance of this agreement until May 15th, 1865, the Thompsons and Irvin holding the property in the meantime under the agreement. On December 17th, 1856, an article of agreement was entered into by Irvin & Thompson to sell and convey to John Mattern, John B. Mattern and George Mattern, a portion of the above-described tracts, supposed to contain about three hundred acres, at $25 per acre, amounting to about $7,500, and in this agreement it was expressly stipulated "Irvin & Thompsons to make the same title to Mattern that the Messrs. Curtins make them, but reserve to themselves, their heirs and assigns, the privilege to enter upon the land for the purpose of making search for iron ore, with the privilege to take the same away, and ground sufficient for roads and screening-floors and all other uses about the banks, but agree to fill up all the shafts they sink where no ore is got, and to pay at the rate of 12½ cents per ton of 2240 pounds of good clean ore as a compensation for any damage that may be done the land. . . . . And it is further understood that said Irvin & Thompson reserve to themselves, their heirs and assigns, the entire ore-right on ten acres of land lying between the Desert Houses and Richards and Chambers, with the privilege to enter upon the same to make search for iron ore and ground sufficient for roads and screening-floors and all other uses about the banks, and not to pay anything for that privilege."

Under this agreement, the Matterns became entitled to a deed on April 3d, 1857, before Irvin & Thompsons had received their deed from the Curtins. On the 22d of August, 1857, a deed was executed by James Irvin, Moses Thompson and wife and John I. Thompson and wife, to the Matterns, in pursuance of the agreement, for a consideration of $7,862.75, on which was endorsed a release by the Curtins, for a consideration of one dollar, of "all their interest in the land mentioned and described in the within deed." By this deed Irvin & Thompsons convey to the Matterns by metes and bounds a tract "con-

taining 314 acres and 82 perches net measure, being originally part of the Andrew Hunter, R. Shaw and Josiah Lambourn's surveys, which became vested in Roland Curtin, and sold by Austin, James, Roland, John, Andrew and Constans Curtin to the parties of the first part, as their release to the same, executed on this deed, fully shows.　The said parties of the first part make the following reservations, to wit: The right to mine and take away ore from ten acres of land contained in " certain fixed boundaries.　" Also, all the ore on the remaining part of the tract, by paying said parties of the second part at the rate of twelve and a half cents per ton of 2240 pounds for every ton mined and taken away by them off the said tract, excepting on the ten acres, which said parties are to have without charge; they also reserve the entire privilege of all ore on said premises.　To have permission to enter upon said premises to mine, clean and take away the same without let or hindrance from the said parties of the second part, their heirs or assigns.　It is understood that the above reservation is to the parties of the first part, their heirs or assigns.　It is understood that the parties of the first part bind themselves to fill up any holes made on the premises in searching for ore where ore is not found.　The clear understanding as regards the above-named reservation is to extend to the parties of the second part, their heirs and assigns, and to give full privilege to enter upon the ground, with teams, wagons, etc., to haul said ore away, with privilege of ground for roads, etc., and to embrace the exclusive right to all the ore on both the ten acres and the balance of tract."　Under the title so acquired by the agreement and deed from Irvin & Thompsons, the Matterns entered into possession of the land conveyed, erected buildings, improved the property, and have continued in undisturbed possession ever since.　For over twenty-one years they remained in undisputed possession of the property.　During all this time both Thompsons and Matterns supposed that the entire tract was surveyed and patented.　Their first information to the contrary was when a certain James Cross, in June, 1878, filed an application for 60 acres of land, evidently located on part of the Shaw improvement.　And as soon as Moses Thompson, after investigation, could find no evidence that the Shaw tract had ever been surveyed or patented, he also filed an application for a tract of 230 acres to cover the Shaw tract, and at the same time entered a caveat against the Cross application.　Cross likewise caveated against Thompson's application.　Both parties entered citations, and depositions were taken; but on the 17th of May, 1879, the dispute between Thompson and Cross was finally settled by the latter assigning his rights under his application to Moses Thompson

and John I. Thompson.   On the day this settlement was made some of the Matterns were present and notified the Thompsons that they would now expect them to take the necessary steps to have the lands included in the deed from the Thompsons to the Matterns patented.   In the proceedings on the Cross application, it was also discovered that the Andrew Hunter had never been patented.   After consultation among the parties and their attorneys it was then decided to withdraw both the Cross and the Moses Thompson applications, and to substitute a new one in the names of Moses and John I. Thompson, for 400 acres that would cover both the Shaw and Hunter tracts, setting forth in the application that it was made " for the use, benefit and protection of applicants and of those claiming under them, according to their respective interests and titles, and not otherwise."   Until this time the Matterns and Thompsons acted in harmony, both desirous of securing a patent such as would protect their respective interests in the property.   This application was filed between August 15th and 20th, 1880, and on September 25th, 1880, William H. Blair, in right of William Cross, entered a caveat against this application.   Nearly a year afterwards the Matterns also entered a caveat to the Thompson application, and on August 23d, 1882, applied for 200 acres in their own name, covering the ground conveyed to them on the Thompson deed.

The following is the application of the Thompsons, with the accompanying affidavits :

Moses Thompson and John I. Thompson, of the townships of College and Huston, respectively, in the county of Centre, apply for four hundred acres of land, situated in the townships of Half Moon and Patton, and county of Centre, adjoining lands of Mattern Bros. and others on the east, Lyon, Shorb & Co. on the south, A. H. Griffen, and an old survey in the name of Josiah Lambourn, on the west, and said Lambourn survey on the north.            MOSES THOMPSON,

JNO. I. THOMPSON.

To the Secretary of Internal Affairs of Com. of Pa.

CENTRE COUNTY, *ss.*

Before me, the subscriber, a Justice of the Peace in and for the township of Half Moon and county aforesaid, personally came Wm. Reed, a disinterested witness, who, being sworn according to law, did depose and say that to his certain knowledge the land above described has been improved, and that it was first permanently improved about the year 1857, and not before, that the improvements thereon in the main consist of three farms or parts thereof opened and improved by Mattern Bros. and Wm. H. Blair, with farm buildings erected thereon,

[Thompson et al. v. Mattern et al.]

and that David Mattern, George Mattern and Jeremiah Ewing are the parties now settled and residing on said land.

his

WM. ✕ REED.

mark.

Witness to mark: JOHN CAMPBELL.

Sworn and subscribed before me this 13th day of August, 1880.                    . JOHN H. LEVER, J. P.

CENTRE COUNTY, ss.

Before me, the subscriber, a Justice of the Peace in and for the township of Half Moon and county aforesaid, personally came Moses Thompson and John I. Thompson, the above named applicants, who, being duly sworn according to law, did depose and say that they verily believe that no warrant or other office right has been issued for the land above described either in their own names or in the name or names of any other person or persons under whom they claim the same, and that they have an equitable right in themselves and those claiming under them, to wit, the parties named as settled on said land, to the said land and the improvements thereon in manner following, to wit: As far back as can be traced this land was known as two tracts, respectively as the Robert Shaw and the Andrew Hunter, and until recently it was supposed that warrants had been regularly issued in these names, but quite lately the contrary has been ascertained.

Slight improvements seem at one time to have been made thereon by these men, the evidence of which appears in finding the tracts on the seated list at an early day, but said improvements, if such they could be called, were abandoned over thirty years ago. In 1854 your applicants purchased both tracts, with others, from Curtin's heirs, in whom they had become vested, the Robert Shaw by deed from J. B. Shugert, executor of Robert Shaw, dec'd, to Roland Curtin, Sr., bearing date January 2d, '33, and the Andrew Hunter through divers conveyances, and on May 15th, 1865, the deed of Curtin to your petitioners or applicants was delivered. Meantime your applicants had sold parts of said lands to settlers hereinbefore named, and those under whom they claim, and they had entered upon and improved the land as before stated.

This application is made for the use, benefit and protection of your applicants and those claiming under them, according to their respective interests and titles, and not otherwise.

MOSES THOMPSON,
JOHN I. THOMPSON.

Sworn and subscribed before me this 13th day of August, 1880.                    JOHN H. LEVER, J. P.

On April 13th, 1882, the Board then granted a warrant to the Matterns, and on April 19th, 1882, the survey was returned. On Aug. 16th, 1882, an application for a patent was filed by the Matterns, to which John I. Thompson entered a caveat on August 23d, 1882, praying the patent to be "issued to himself and Moses Thompson, for themselves and in trust for those claiming under them, according to their respective interests, or, if granted to applicants, that the rights of said Moses Thompson and the caveator may be preserved;" and on September 21st, 1882, the said John I. Thompson filed an additional caveat, for the reason that the survey as returned "covers, at its northwestern end, about seventy-three acres of a tract already warranted and patented in the name of Josiah Lambourn, in which your caveator still owns the iron ore."

On this same day, Sept. 21st, 1882, the Board of Property made the following order: "After hearing depositions and arguments of counsel, the Board sustained the caveat, and direct patent to issue to Moses Thompson and John I. Thompson." The defendants in error thereupon brought this ejectment on October 2d, 1882, in the nature of an appeal from the decision of the Board.

On the trial the defendants made, *inter alia*, the following offer of evidence:

Defendants offer application of Josiah Lambourn, dated the 25th of August, 1792, for 400 acres of land adjoining the Petit and Lewis claim in the southeast side of Franklin township, Huntingdon county, Pa., while on the same paper there is an application for another survey.

"Beaver: We propose to follow this with the warrant, survey and patent·of the Josiah Lambourn to show that a portion of the land covered by the Mattern survey has already been surveyed and patented by the commonwealth, and they having granted a patent, the commonwealth has no right to grant a patent for this land the second time, and after that the fact that this was known to the plaintiffs at the time their application was made.

Plaintiffs' counsel object, because the defendants, having joined with the plaintiffs in an application for a patent upon this survey, or rather have made an independent application for a patent upon this survey, are concluded by that application, and cannot impeach the validity or regularity of a survey upon which they have asked a patent, and which patent the Board of Property has awarded to them; that, in asking for a patent, they have asked the commonwealth to ratify that survey, and they have ratified it themselves by receiving from the Board of Property the patent, who awarded ·to them an allocatur upon this survey.

[Thompson et al. v. Mattern et al.]

2d. That it is irrelevant and immaterial, because the parties, have made up this issue of the Board of Property under the 11th section of the Act of the 3d of April, 1792.

By the Court.—The objection is sustained and the evidence is excluded. We don't understand that the Lambourn title enters into this case at all. The issuing of this patent cannot affect the rights previously granted by the commonwealth, and those rights are not in question in this case, therefore we think the evidence is irrelevant. Defendants except, and bill sealed for them. (First assignment of error.)

Defendants offer next warrant of the commonwealth of Pennsylvania to William B. Henderson, dated March 12th, 1841. Surveyed Aug. 2d, 1841. Purchase-money paid. Sold by William B. Henderson to Roland Curtin. That conveyance, however, is not found. It is hardly proper to offer that alone, but we offer in connection with that the patent of the commonwealth for the William B. Henderson tract of land to John I. Thompson, made on the 22d of November, 1883.

Plaintiffs' counsel object, because it was made since the institution of the suit.

By the Court.—Objection sustained; exception noted for defendants, and bill sealed. (Second assignment of error.)

Defendants offer to prove, by the witness on the stand and other witnesses, that the survey in the name of Josiah Lambourn and the survey in the name of William B. Henderson cover portions of the land included in the survey in the name of John B. and George Mattern, the patent to which is in controversy in this case, for the purpose of showing that the commonwealth cannot grant, and ought not to grant, to the plaintiffs a patent for any greater amount than what is included within the Mattern survey, outside of the lines of the Lambourn and Henderson surveys.

Plaintiffs' counsel object, that the offer is immaterial, incompetent and irrelevant, and not responsive to the issue.

By the Court.—We think that this evidence is immaterial and irrelevant. The whole case shows that the plaintiffs have a legal title, with the exception of whatever rights the defendants have under the reservation in the deed to the land which the defendants claim is covered by the prior two surveys and patents, therefore the fact that the plaintiffs acquired a second title to that which they already have a title cannot injure the defendants. This is said without expressing any judgment as to the rights of the defendants under their reservation; to which defendants except, and bill sealed for the defendants. (Third assignment of error.)

The court instructed the jury as follows:

This is an action of ejectment in the nature of an appeal

from the decision of the Board of Property. It comes into court in this way : The plaintiffs from the commonwealth obtained a warrant, and a survey upon that warrant, and upon that applied for a patent.

The defendants filed a caveat, which is in evidence, and which therefore will show what it contains against the issuing of the patent to the plaintiffs, with an added claim that, if issued to the plaintiffs, it should be issued in a modified form. The Board of Property sustained the caveat, and directed that a patent be issued to Moses and John I. Thompson; in other words, to the defendants.. The plaintiffs thereupon, within the six months limited by the Act of Assembly, began this action, claiming the patent. This dispute would never have arisen probably had it not been for the fact that, in the deed that was made to these plaintiffs by the defendants prior to the date of the application for the warrant, survey and patent, there was a reservation of the ore-right in the land—that is, a reservation of the right to the grantors in that deed, the present defendants to take from the land the iron ore contained in it on paying at the rate of $12\frac{1}{2}$ cents royalty per ton, as specified in the reservation, for all the ore taken; and the defendants, it appears, apprehended that if a patent were granted to the plaintiffs, their right to take the ore would be destroyed.

When this deed was made, it seems to have been understood by both parties that the present defendants, the grantors in that deed, had a title to all of this land; subsequently in some way it was discovered, or supposed to have been discovered, that the defendants, the grantors in that deed, had not a title to all of the land, but that the title to some of it was still in the commonwealth, including part of that in controversy here, if not all.

The various proceedings before the Board of Property resulted finally in a hearing before that Board to determine who was to obtain the patent, and the granting of the patent by the Board to the defendants.

[The plaintiffs came then with their action of ejectment in the nature of an appeal from the Board of Property, and claim in this action that they ought to have the patent, and that your verdict ought to be for them for the land in controversy. The defendants say that ought not to be the case, and one reason they give is, that the plaintiffs, by their action while the proceedings were pending in the office of the Secretary of Internal Affairs with reference to this warrant, survey and patent, estopped themselves from now claiming to have the right to an absolute patent for this land.

The question of estoppel is one for the court. The evidence

upon which the estoppel is claimed to be founded has been taken and is on record, and, without further commenting upon it, for the purpose of this case, we instruct you that it does not establish an estoppel. The plaintiffs are not estopped by what was done, as shown by the evidence, from claiming this patent.] (Fourth assignment of error.)

[Another ground upon which the defendants claim that an absolute patent should not be issued to the plaintiffs is because of this reservation of the ore-right set forth in their deed to the plaintiffs. For the purposes of this case, we instruct you that this reservation is an incorporeal hereditament; that it is not a reservation of the land, but simply a right or privilege to go upon the land if they choose, and to take out the iron-ore, with an obligation to pay the price agreed upon for so much as they take out; that is not such a substantial thing as may be made the subject of an action of ejectment, therefore its existence cannot be set up as a defence in an action of ejectment. Therefore, we think the reservation does not stand in the way of a recovery in this case.] (Fifth assignment of error.)

[The defendants also offered to introduce evidence to show that part of the land in controversy here was previously patented to other parties under the warrant of Josiah Lambourn, and we excluded that evidence. We say to you now—to put it on the record, so that defendants may have the benefit of an exception—whether the land was previously patented or not does not enter into the case. The evidence was excluded in an objection by the plaintiffs; they asked us to exclude that question from your consideration. It was done at their request and we made it a part of the record. We do not think that is one of the questions arising in this case. The question whether there was a prior patent for a part of this land does not enter into the case, for if there were, the rights under that patent cannot be affected by the result of this trial. If the commonwealth had granted this land, at a prior time to another person who was entitled to receive it, the rights of that person or those who claim under him cannot be taken away in this proceeding.] (Sixth assignment of error.)

The question we have to determine here is: which of the parties now before us has the right to the patent under the warrant and survey in evidence in this case?

[We also instruct you that the question of the rights which the defendants claim under this reservation have not been raised or passed upon in this case. We simply decide and instruct you that this ore-right is an incorporeal hereditament, and that, therefore, in the very nature of things, the right to it cannot be passed upon in an action of ejectment. When the parties come in conflict with respect to that right, what-

ever it may be under that reservation, it will then be a question to be decided between them.] (Seventh assignment of error.)

[But it does not enter into this case, and we instruct you, as a matter of law, that the plaintiffs, under their warrant survey and return of survey, have the legal title from the commonwealth to the land in controversy here, as against the defendants, and that therefore your verdict must be for the plaintiffs.] (Eighth assignment of error.)

Verdict for the plaintiffs for the land described in the writ and judgment thereon, whereupon the defendants took this writ and filed the assignments of error as hereinbefore shown.

*J. W. Gephart,* (*James A. Beaver* with him,) for plaintiffs in error. The learned judge misapprehended the special character of the action, and tried it without admitting all the evidence which was produced before the Board of Property, was material to the issue, was necessary to determine the legal rights of the parties to the controversy, and undoubtedly influenced the Board in rendering the decision which was appealed from.

It was the proper province and duty of the Board of Property to inquire whether any survey, patent improvement, or other inceptive right, had been acquired by any one else before the survey was made on the Mattern warrant; and if they so found, then it was within their discretion and their duty to refuse a patent to the Matterns: Act of April 3d, 1792, § 11, Purd. Dig., 1026, pl. 9; Act of April 5th, 1782, § 2, Purd. Dig., 1026, pl. 7; White *v.* Kyle, 6 S. & R 112; Galbraith *v.* Elder, 8 Watts 93; Shornbeyer *v.* Baker, 29 Pa. St., 404; Ahen *v.* Newton, 10 Watts 323.

The effect of the decision of the Board of property, unappealed from, was to vest in the successful party any and all rights of every description which the losing party ever had in the land: Shornbeyer *v.* Becht, 5 Watts, 194; French *v.* Seely, 6 Watts, 292; Eye *v.* Sidle, 3 Barr, 115.

Upon an appeal from the Board of Property the court should have heard the same evidence heard by the Board, and determine whether the decision of the Board was just and legal: King *v.* Baker, 29 Pa. St., 200.

The undisputed facts in this case are that prior to March 17th, 1854, the plaintiffs in error claimed to own and were in possession of the land in dispute; on that day defendants purchased from them by agreement; under this agreement defendants obtained the possession from the plaintiffs, built houses thereon, cleared, fenced, and cultivated it as a farm. Without this agreement and the surrender of possession by the plaintiffs in error, the defendants could never have acquired

[Thompson et al. *v.* Mattern et al.]

their present title in the land. Now, under this state of facts, we contend that the defendants in error were estopped from acquiring a title adverse to their grantors without first making a *bona fide* surrender of the possession obtained under the article of agreement, and bringing their action to try that title.

In support of this position, we cite the following authorities: Caufman *v.* Congregation of Cedar Spring, 6 Binney, 59; Naglee *v.* Ingersoll, 7 Barr, 185; Cleavinger *v.* Reimar, 3 W. & S., 486; Green *v.* Munson, 9 W., 37. The same doctrine has been extended to one who goes into possession of land under a contract of sale. Any one going into possession of land under the circumstances named cannot set up any outstanding title, which he may have purchased in, but must, first, *bona fide* surrender the possession and bring his action to try that title: Blight's Lessee *v.* Rochester, 7 Wheat., 535; Willison *v.* Watkins, 3 Pet. 43.

The court erred in construing the reservation of the ore to be an incorporeal hereditament: Shoenbeyer *v.* Lyon, 7 W. & S. 192; Oeldwill *v.* Fulton, 31 Pa. St. 478.

*William H. Blair* (*John G. Law* with him) for defendants in error. In the court below the defendants in error shifted their ground entirely and undertook to make title through the Lambourn and Henderson surveys, which they now claimed had been returned upon the land in dispute prior to 1857. They showed a regular chain of title from the commonwealth down to the Messrs. Curtins, and offered in evidence a deed of special warranty from the Curtins to themselves executed in 1865. But they had previously given in evidence what they term a "quit claim deed" made by these identical grantors directly to the Matterns, in 1857, without any reservation whatever. It will not be seriously claimed that a plaintiff in ejectment, who holds conveyances from different grantors, of the same land office title to the same premises, is estopped from setting up the paramount title of the one, or alleging that he derived no title from the other. Of course the rule is different as to the right of, and evidence of, a defendant claiming under the same title as the plaintiff. "He can say nothing against it." Powers *v.* McFerran, 2 S. & R. 44; Casey *v.* Inloes, 1 Gill, 430; Coryell *v.* Cain, 16 Cal., 576; Watson *v.* Gilday, 11 S. & R., 337; citing 10 Johnson, 292 (Grangiac *v.* Arden), where the principle is clearly and tersely stated.

According to these authorities, and this condition of the title, the estate of the Curtins in the premises in question, never vested in the plaintiffs in error, but passed directly over to the Matterns, and gave them the right to recover as against the Thompsons claiming exclusively under the same title, but

by a subsequent conveyance. Under this evidence, introduced by themselves, no court could have done otherwise than rule the case against them.

The caveat filed by Thompsons, August 23d, 1882, was a virtual attempt to appeal from the former decision of the same Board instead of the Common Pleas of Centre county. That this cannot be done, is abundantly shown by the cases cited in the argument of plaintiffs in error (Shoenberger *v.* Baker, 22 Pa., St. 398), in which the court below is reversed on the ground stated on the very page cited (404) that " when a statutory remedy is given it must be strictly pursued," the remedy referred to being the identical one in question ; an action of ejectment in the Common Pleas of the proper county, instituted within six months from the adverse decision.

If we rightly apprehend the learned counsel of plaintiffs in error, they ground the authority of the Board to subrogate the caveators to the rights of the warrantees, upon the doctrine of equitable estoppel. " But," as was said by Justice FIELD, when delivering the opinion in Brandt *v.* The Virginia Coal & Iron Co., 3 Otto, 326, it is essential to the application of the principle of equitable estoppel to the title to real property, that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the true state of the titles, but also of any convenient means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel," citing Crest *v.* Jack, 4 Watts, 540 ; and Knouff *v.* Thompson, 4 Harris, 361, as Pennsylvania cases sustaining the text. See also Dungan *v.* American Life Insurance Company, 52 Pa. St., 255.

Mr. Justice GORDON delivered the opinion of the court, March 14th, 1887.

We are entirely satisfied with the rulings of the learned judge of the court below on the main points involved in this case. That the Board of Property made a mistake in awarding the patent to the defendants, we have no doubt, for the fee to the body of the land in controversy was clearly in the plaintiffs. Nevertheless, we think there was an error in directing a general verdict for the plaintiffs without a reservation of the defendants' ore right. That right is found in the deed of Irvin and the Thompsons to the Matterns, dated August 22d, 1857. The language of the reservation is, *inter alia*, as follows : " They also reserve the entire privilege of all ore on said premises. To have permission to enter upon said premises to mine, clean and take away the same without let or

[Thompson et ál. v. Mattern et al.]

hindrance from the said parties of the second part, their heirs or assigns."

The learned president of the Common Pleas held that this reservation left in the vendors an incorporeal hereditament only, and that the verdict, though general, would have no effect upon it.   But, without passing positively upon the question, we very much doubt the incorporeal character of the reservation.   In the case of Whitaker v. Brown, 46 Pa., 197, where a reservation, very nearly like the one before us, was considered, it was held, that it must be construed as an exception, and that, as a consequence, the fee in the reserved mineral remained in the vendor.   Moreover, according to the case of French v. Seeley, 6 Watts, 292, the issuing of the patent, the necessary result of the present verdict and judgment, will cut off all rights which the defendants heretofore may have had in the land, one of which, undoubtedly, is the right of entry for the purpose of removing the ore.   We are of opinion, therefore, that the defendants' right should have been reserved by the verdict, for thus only can it be recognized in the patent.   As this court, as well as the Common Pleas, has the power to amend verdicts in ejectments, especially those of an equitable kind, such as the one before us, and as it would be to no purpose to send the case back for re-trial, we direct an amendment of the verdict as follows: After the words "they find for the plaintiffs the land described in the writ," add, " reserving to the defendants their rights to the ore that may be in and upon said land, together with the right of entry, as described and limited in the deed of James Irvin, Moses Thompson and Mary, his wife, and John I. Thompson and Mary, his wife, to John Mattern, John Mattern, Jr., & George Mattern, dated 22d of August, 1857."

With this amendment the judgment is affirmed